# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00110-CV

**Sung Wan Jun and wife, Jung Soon Jun, Individually and as Sole Heirs of the Estate of Ji Hae Jun, Deceased, Appellants**

**v.**

**Lloyds and Other Various Insurers, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. 99-03062, HONORABLE PAUL R. DAVIS, JUDGE PRESIDING

Sung Wan Jun and Jung Soon Jun (collectively, "appellants") obtained a $1.72 million judgment against Risto Miikkulainen ("Miikkulainen") and sought to satisfy it in a direct action against Lloyds. They appeal from a judgment of the district court denying their motion for summary judgment and granting Lloyds' motion for summary judgment. Because we conclude that Miikkulainen is not an insured under the aviation liability policy issued by Lloyds, we will affirm the district court's judgment.

## BACKGROUND

The City of Austin ("City") entered into a lease agreement ("Lease #1"), allowing Austin Aero, Ltd. ("Aero") to become a fixed base operator ("FBO") at Robert Mueller Airport. Lease #1 required that Aero carry a minimum amount of liability insurance for the protection of the

City. Lloyds provided such insurance, through its agent Sedgwick, to PLM International and PLM Financial Services (collectively, "PLM"), to cover them and their subsidiaries. As a PLM subsidiary, Aero was covered under the policy. Lloyds presented a certificate of insurance ("certificate") to the City, indicating that Lloyds was providing Aero's aviation liability insurance, subject to the terms of policy number V4K690B.

As permitted by the terms of Lease #1, Aero entered into a commercial contract ("Lease #2") whereby Bell Flight Training, Inc. ("Bell Flight") could conduct aircraft rental and flight instruction at the airport, and use facilities within Aero's FBO. Bell Flight was not a subsidiary of PLM or Aero, and thus was not a named insured or additional insured under the Lloyds policy. Aero and Bell Flight did not share employees or flight equipment. The only relationship between Aero and Bell Flight was the contractual one of lessee/sublessor and sublessee. Bell Flight did not contract directly with either the City or Lloyds.

On January 24, 1995, Miikkulainen rented a Cessna 152 Aerobat airplane from Bell Flight. Ji Hae Jun ("decedent") was Miikkulainen's passenger on the flight to Sugar Land Municipal Airport. In preparation for the return flight, Miikkulainen instructed decedent to exit the airplane and remove the chock from in front of the wheels. In doing so, decedent was struck by the airplane propeller and died as a result of her injuries. Shortly thereafter, as sole heirs of decedent's estate, appellants filed suit against Miikkulainen. No other defendants were joined in that suit. After an actual, contested trial, appellants obtained a judgment in their favor for more than $1.72 million.

In March 1999, appellants filed suit against Lloyds in an attempt to collect on the judgment obtained against Miikkulainen.[1] In the district court, appellants contended that Lloyds was liable for payment of the judgment because Miikkulainen was an omnibus insured[2] under the policy issued to cover Aero.

In September, Lloyds filed its motion for summary judgment on the grounds that appellants lacked standing, or alternatively, were barred from bringing a direct action against Lloyds. Appellants then filed their own motion for summary judgment requesting that the court find, as a matter of law, that Lloyds breached its contractual duty to indemnify Miikkulainen and must indemnify him for the amount of the judgment entered in favor of appellants. In November, the district court entered an order granting Lloyds' motion and an order denying appellants' motion. Appellants seek a reversal of the judgment in favor of Lloyds and rendition of a judgment in their favor, or alternatively, a remand to the trial court for resolution of any material fact issues.

## STANDARD OF REVIEW

When both parties move for summary judgment, each party must carry its own burden as the movant. *City of Houston v. McDonald*, 946 S.W.2d 419, 420 (Tex. App.—Houston [14th Dist.] 1997, writ denied). When both motions are before the court, the court may consider all the summary judgment proof in deciding whether to grant either motion. *Id.* The court can rely on one

---

[1] Although the record is unclear, appellants' counsel stated at oral argument that both Miikkulainen and Bell Flight were uninsured.

[2] An omnibus clause is defined as "a clause or section (as of a contract or statute) intended to cover various items not otherwise specifically covered; esp: a clause in an automobile insurance policy that extends protection to others than the named insured." Webster's Third New International Dictionary 1574 (1986).

3

party's proof to supply missing proof in the other party's motion. *Seaman v. Seaman*, 686 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The court may affirm the summary judgment, reverse and render a judgment for the other party, or reverse and remand if neither party has met its burden. *Calhoun v. Killian*, 888 S.W.2d 51, 54 (Tex. App.—Tyler 1994, writ denied). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate "patently unmeritorious claims or untenable defenses." *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex. 1972) (citation omitted). On appeal, all reasonable inferences will be indulged, and all doubts will be resolved in favor of the losing party. *University of Tex. Health Sci. Ctr. v. Big Train Carpet, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987). The propriety of summary judgment is a question of law; therefore, we review the trial court's decision *de novo*. *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). "When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

**DISCUSSION**

Appellants contend that the trial court erred when it determined that their judgment against Miikkulainen was not enforceable in a direct action against Lloyds, granted Lloyds' motion for summary judgment, and denied their own. Under Texas law, a plaintiff generally may not bring a direct action against an insurer. *Burton v. State Farm Mut. Auto. Ins. Co.*, 869 F. Supp. 480, 486 (S.D. Tex. 1994), *aff'd*, 66 F.3d 319 (5th Cir. 1995). A limited exception allows a third party to sue an insurer if the liability of an insured has been established by judgment or written agreement with the

insurer. *Id.* Appellants' judgment in the contested negligence trial is solely against Miikkulainen. They argue that they have standing to sue Lloyds to recover this judgment because Miikkulainen is an omnibus insured under the policy issued by Lloyds for Aero.

Appellants concede that neither Bell Flight nor Miikkulainen were named insureds in the policy; nor were they additional insureds, as was the City. Appellants propose several theories to demonstrate how Miikkulainen became an omnibus insured under a policy to which he was a stranger. We will examine each in turn.

## A.  The City Standards

Lease #1 requires Aero to comply with "all federal, state or local statutes, ordinances, regulations and standards applicable to Lessee or its use of the demised premises." The Minimum Standards for Commercial Aeronautical Activities on Robert Mueller Municipal Airport ("standards"), adopted by Austin City Council ordinance, require that "[a]ny lessee desiring to engage in the rental of aircraft to the public must provide as a minimum the following: Public liability and property damage insurance with limits of not less than $1,000,000 . . . [and] Renter Pilot . . . insurance . . . in an amount determined by the City Attorney." Lease #1 expressly incorporates the standards as additional terms of the *lease.* However, appellants argue that (1) the standards are incorporated as terms of the Lloyds *insurance policy* as a matter of law; (2) therefore, the policy provides renter pilot liability coverage as a matter of law; and (3) this coverage extends to Bell Flight and its customer, Miikkulainen.

The standards set forth the City's requirements for lessees at the airport. They require insurance of various types and amounts, depending on the specific aeronautical activities in which the

lessees engage. All lessees are required to obtain proof of public liability and property damage insurance of at least $1 million, which names the City as an additional insured. Only lessees who engage in aircraft rental, flight training, or flying club must carry additional renter pilot coverage in an amount required by the city attorney. The standards define the duties, rights, and liabilities of the parties to airport leases and subleases,[3] and are enforceable among those parties. As the lessor, the City could require Aero and Bell Flight to carry insurance for those aeronautical activities in which they were engaged at the airport. However, Lloyds was not a party to either Lease #1 or Lease #2. Lloyds' duties, rights, and liabilities are defined by the terms of the insurance policy.

Appellants cite several cases for the proposition that the standards are terms of the insurance policy as a matter of law. We find these cases distinguishable. Courts in the cited cases were interpreting or applying statutes that *expressly* defined insurance contract terms, required insurance for the benefit of judgment creditors, created insurance coverage as a matter of law, or defined the rights and liabilities of the parties to insurance contracts. *Camden Fire Ins. Ass'n v. Clayton & Co.*, 6 S.W.2d 1029, 1030 (Tex. 1928) (applying statute protecting interest of mortgagee under fire insurance policies from "any act or neglect of the mortgagor or owner of the property insured by said policy," court concluded that statute created independent contract between mortgagee and insurer); *Scanlan v. Home Ins. Co.*, 79 S.W.2d 186, 190 (Tex. Civ. App.—Beaumont 1935, writ ref'd) (stating that parties cannot contract "that a fire loss which under the law is total shall be deemed to be only partial"); *Pan-American Cas. Co. v. Basso*, 252 S.W.2d 505, 506 (Tex. Civ.

---

[3] The standards state that "FBOs have the right . . . to enter into sublease agreements . . . . Any such sublease will be subject to the provisions of these minimum standards and the terms of the FBO agreement."

6

App.—El Paso 1952, writ ref'd) (interpreting ordinance in which city simultaneously granted franchise and expressly required cab company to post bonds or insurance policies for benefit "of every judgment creditor who has been injured through the negligent operation of its automobiles"); *Carroll v. Universal Underwriters Ins. Co.*, 613 S.W.2d 815, 817 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) ("Only statutes bearing on the subject matter of insurance contracts, or which define the rights and liabilities of parties to such contracts, need be considered as applicable."); *Howard v. INA County Mut. Ins. Co.*, 933 S.W.2d 212, 218 (Tex. App.—Dallas 1996, writ denied) (applying statute which prohibited delivery of any auto insurance policy that did not provide for UM/UIM coverage, court concluded that "every automobile liability policy of insurance delivered in this State includes UM/UIM coverage by operation of law").

There is no proof in the record that the City intended to define the duties, rights, and liabilities of parties to public liability, property damage, or renter pilot insurance contracts. The standards do not attempt to define contract terms, create coverage, protect third-party beneficiaries (other than the City itself), or require specific policy terms as a matter of law. We conclude that the standards are not incorporated as terms of the insurance policy; therefore, the policy does not provide renter pilot insurance as a matter of law.

B. **The Existence of Non-delegable Duties**

Appellants assert that (1) Lease #1 created a non-delegable duty for Aero to carry renter pilot insurance; (2) Aero attempted to impermissibly delegate this duty to Bell Flight; (3) because Lloyds certified that it insured Aero, Lloyds had a duty to provide this "mandatory" renter pilot insurance;

7

and (4) therefore, as a matter of law, the policy provides renter pilot insurance extending not only to Aero, but also to Bell Flight, and Bell Flight's customers. We reject this analysis.

**(1) Franchise Analysis**

Appellants argue that Lease #1 constitutes a "franchise," which makes Aero strictly liable for all aeronautical activities authorized by Lease #1, irrespective of who is conducting those activities.

> A franchise is a special privilege conferred by government upon an individual or organization which does not belong to the citizenry at large, and in which activity one otherwise could not engage without the franchise.
>
> . . . .
>
> Franchises under Texas case law generally take the form of utilities, or other monopolies, created to further the public interest. Moreover, there must exist a contract between grantor and grantee which is mutually binding and enforceable. Whether an instrument, ordinance, or contract amounts to a franchise depends largely upon the manner of its performance in compliance with its terms.
>
> . . . .
>
> . . . One who claims a franchise right or privilege in derogation of the common rights of the public must prove his title thereto by a grant clearly and definitely expressed, and cannot enlarge it by equivocal or doubtful provisions or probable inferences.

*State v. Operating Contractors ABS Emissions, Inc.*, 985 S.W.2d 646, 653 (Tex. App.—Austin 1999, pet. denied) (citations omitted).

We note that Lease #1 "grant[s] to [Aero] the *non-exclusive* right and privilege to conduct business normally provided by a Fixed Base Operator on Airport." (Emphasis added.) This grant was "conditioned upon the right to use said public airport facilities *in common with others*

authorized to do so." (Emphasis added.) There is no indication that either the City or Aero considered Lease #1 the grant of an *exclusive franchise*. Not only do we reject the argument that Lease #1 created an exclusive franchise, we note that, as in *Operating Contractors*, any putative franchise runs only to the grantee, in this case Aero, that contracted with the legislative body, the City. *See id.* Lloyds was not a party to either Lease #1 or Lease #2, had no duty to inspect the leases, and had no contractual relationship with either the City or Bell Flight. Appellants do not assert that Lloyds was granted a franchise. Any case against Lloyds rises or falls based on the express terms of the insurance policy and the certificate.

### (2) Contract Analysis

Appellants' assertion that Aero was required to carry renter pilot insurance is contradicted by a careful reading of Lease #1 and the standards. Article VI of Lease #1 governs insurance matters and expressly provides as follows:

> The Lessee shall secure public liability and property damage insurance in which the City shall be named an additional insured with the Lessee. . . . Said insurance shall protect the City against any and all liability for death, injury, loss or damage arising out of any of the following conditions:
>
> 1. The negligent operation of Lessee's equipment at or about the Airport, or for
>
> 2 The negligence of Lessee's agents, servants or employees.
>
> Such policy or policies shall be for not less than the amount of $1,000,000 combined single limit and . . . shall be held for the benefit of the parties as their respective interests may appear.

In addition, Aero was required to carry hangar keepers liability, fire, and extended coverage. The terms of Lease #1 did not require Aero to carry renter pilot insurance. Appellants do not assert that the accident occurred in the "negligent operation of [Aero's] equipment."[4]

As noted above, the standards were expressly incorporated as terms of Lease #1 and as a result, bound Aero. The standards are comprised of eleven discrete sections defining the specific requirements for lessees engaging in various aeronautical activities. The standards require that (1) every lessee carry public liability and property damage insurance naming the City as an additional insured; (2) lessees engaging in aircraft rental, flight training, or flying clubs carry renter pilot insurance; (3) lessees engaging in two or more commercial aeronautical activities carry "each type of insurance required for the specific activity." Aero did not engage in any aeronautical activity requiring renter pilot insurance under the standards.[5]

It stands to reason that if Aero did not have a duty to carry renter pilot insurance, it did not attempt an impermissible delegation of that duty to Bell Flight. Furthermore, we note that Lease #1 permitted Aero to do exactly what appellants maintain it could not: delegate its rights and responsibilities under Lease #1, in whole or in part. Lease #1 provides as follows:

---

[4] Appellants do make a respondeat superior argument that may go to the second condition in Article VI of Lease #1. This argument will be considered in due course.

[5] Appellants cite the General Conditions of the insurance policy providing that "[t]erms of this Policy which are in conflict with the statutes of the state wherein this Policy has application are hereby amended to conform to such statutes." Appellants argue that the insurance policy must be judicially amended to conform to "aviation ordinances" (referring to the standards) requiring renter pilot coverage. Because we conclude that the standards did not require Aero to carry renter pilot coverage, we reject this argument.

10

The Lessee may rent or sublease the demised premises . . . but Lessee shall not rent or sublease all or any part of such premises or the improvements located thereon, including shop or office space, for any purpose without the prior written consent of City. Lessee may, with the prior written consent of City, assign this lease; but in such event, Lessee shall be relieved of any further obligation hereunder, and the City will look solely to such approved assignee for performance of this lease subsequent to the date of such approved assignment.

The standards also provide that "[e]xisting FBOs have the right, with the written prior consent of the City, to enter into sublease agreements for the conduct of aeronautical activities specified in their lease agreements. Any such sublease will be subject to the provisions of these minimum standards and the terms of the FBO agreement."[6]

Lease #1 and the standards permitted Aero to enter Lease #2 for Bell Flight's use of the premises and the conduct of aeronautical activities with the City's consent. While there was no impermissible delegation of duties, a valid sublease existed, under which Bell Flight became subject to the terms of both leases and the standards. Because Bell Flight engaged in aircraft rental, Bell Flight was required to carry renter pilot insurance. If Bell Flight failed to satisfy the terms of the leases or the standards, the proper remedy is not judicial modification of the terms of the Lloyds-Aero insurance policy.

## C. The Certificate of Insurance

---

[6] The record does not contain any document evidencing the City's written prior consent to Lease #2 or a copy of that lease. However, the validity of Lease #2 and Bell Flight's compliance with its terms have never been challenged and are not before us. Nor does the record indicate Bell Flight's noncompliance with the City's standards.

As noted, Lease #1 required Aero to carry public liability and property damage insurance naming the City as an additional insured. Lease #1 also required that "[c]opies of all such policies or certificates of insurance shall be delivered to the City and shall be held for the benefit of the parties as their respective interests may appear." Certificate number PLM002 is in the record and reflects the following: (1) Aero was a named insured; (2) the City was an additional insured; (3) Lloyds was the insurer; (4) policy number V4K690B was effective November 1, 1994, for a one-year period; (5) Lloyds provided aviation liability insurance "up to a combined single limit of not less than $1,000,000 any one accident/occurrence," subject to the terms of policy number V4K690B; (6) Lloyds acknowledged the existence of Lease #1; and (7) the certificate did not "amend, extend or otherwise alter the terms, conditions, limitations or exclusions of the polic[y] referred to."

Appellants argue that (1) the standards absolutely required Aero to secure renter pilot insurance; (2) the standards are incorporated as terms of Lease #1; (3) the certificate acknowledges Lease #1; (4) the insurance policy does not expressly exclude renter pilot insurance; (5) therefore, Lloyds certified to the City that it provided all coverage required by Lease #1, including renter pilot insurance. We disagree.

We have already held that the standards and Lease #1 did not *require* Aero to secure renter pilot insurance. However, we also disagree with appellants' reading of the certificate. Appellants state that "Lloyds certified to the City of Austin that Austin Aero FBO, Ltd. had the required insurance for the activities conducted under Austin Aero FBO, Ltd.'s lease." They read the certificate as Lloyds' guarantee to the City that Lloyds was providing *all* the insurance required by Lease #1. To the contrary, the certificate only documented that Lloyds provided aviation liability

12

insurance subject to the terms of policy number V4K690B. As noted above, Lloyds was not a party to either Lease #1 or Lease #2, had no duty to inspect the leases, and had no contractual relationship with the City. Any case against Lloyds rises or falls based on the express terms of the insurance policy and the certificate, which did not purport to provide renter pilot insurance or coverage for Aero's sublessees.

## D.  Respondeat Superior

Appellants contend that Aero's involvement in Bell Flight's business exceeded that of sublessor. They state in their brief that Bell Flight rented airplanes "with the approval, knowledge and actual participation of Austin Aero FBO" and that "Austin Aero FBO, Ltd., actually rented the aircraft to Risto Miikkulainen. . . . Bell Flight Training, Inc. was not involved in the renting of this aircraft." Appellants cite several cases and observe that "[t]his in effect creates a respondeat superior situation."[7]

> The doctrine of respondeat superior presupposes that the employer is responsible for the acts of his *employee*, acting in the scope of his employment, where negligence of the *employee* is shown to have been the proximate cause of the occurrence. Judgment is allowed against the employer, not because of an overt negligent act of the employer because he committed no wrongful act, but because of a recognized legal fiction . . . . .

---

[7]  It is not entirely clear whether appellants are arguing that liability exists under the respondeat superior doctrine. Their brief posits this theory, but at oral argument, appellants' counsel conceded that Aero was not renting airplanes "directly" to the public and that Aero did not "control the business of Bell."

*Marange v. Marshall*, 402 S.W.2d 236, 238-39 (Tex. Civ. App.—Corpus Christi 1966, writ ref'd n.r.e.) (emphasis added).

The parties do not dispute whether Bell Flight rented airplanes with the approval and knowledge of Aero. However, "[i]t is an elementary principle that before one person can be held responsible for the acts of another, in the absence of special circumstances, it must appear that the latter was the agent of the former." *Moreland v. Leslie*, 166 S.W.2d 902, 904 (Tex. 1942). Aero's approval and knowledge did not make it liable for Bell Flight's conduct. Furthermore, appellants have not directed us to any evidence supporting the assertion that Aero's "participation" in Bell Flight's business exceeded that expected of a commercial sublessor.[8] The evidence certainly does not support the assertion that Aero was conducting an airplane rental business in which Bell Flight "was not involved." Appellant has presented no evidence that Aero shared any profits from or maintained control of Bell Flight's airplane rental business. Appellants have failed to direct our attention to any evidence showing that an employment relationship existed between Aero and any Bell Flight employees.

In addition, recovery under this theory must fail because it depends upon the derivative liability of an employer for the negligence of an *employee*. Even if proof of a respondeat superior relationship between Aero and Bell Flight did exist, it would not automatically result in appellants' recovery against Lloyds. Appellants have never alleged that any Bell Flight employee's negligence

---

[8] Appellants rely on evidence in the summary judgment record that Bell Flight and its customers were allowed to use Aero's pilots' briefing room, but this falls far short of establishing any type of control other than that of an ordinary sublessee relationship.

14

was the proximate cause of injuries to the decedent. The negligent party, Miikkulainen, was Bell Flight's *customer*.

**E. Coverage Under Express Terms of the Policy**

*(1) Policy Coverage for Aircraft in Which Aero Had a "Financial Interest"*

Appellants make several attempts to bring Miikkulainen, and the aircraft he rented from Bell Flight, under the express terms of the Lloyds insurance policy. We will examine these policy terms in succession. The Lloyds policy provided aviation liability coverage for damages caused by operation of aircraft in which Aero held an interest "as owner, lessor or lienholder of the aircraft or arising out of any other aircraft in which [Aero] has a financial interest." Aero was not the owner, lessor, or lienholder of the plane rented by Miikkulainen, but appellants assert that Aero had a "financial interest" in the plane. Appellants cite *Southwestern Graphite* for the proposition that a lessor has an "insurable interest" in the lessee's chattels. *Southwestern Graphite Co. v. Fidelity & Guar. Ins. Corp.*, 201 F.2d 553, 555 (5th Cir. 1953). They assert that when Aero entered Lease #2 with Bell Flight, Aero automatically acquired an "insurable interest" or "financial interest" in Bell Flight's plane, bringing it under coverage of the policy. *Southwestern Graphite* does not support this argument. In that case, the lessor's insurable interest arose by virtue of the chattel mortgage it retained on personal property sold to the lessee. Aero had no such interest in Bell Flight's aircraft.

*(2) Policy Definition of an "Insured"*

The policy definition of an "insured" includes any person, while operating an aircraft, and any person or organization legally responsible for operation of an aircraft that (1) had been

15

repossessed or acquired by Aero; or (2) was being used for industrial aid or charter purposes. Such a person or organization qualifies as an insured only if "the actual operation [was] with the expressed permission of" Aero. Appellants argue that Miikkulainen qualified as an insured under this policy term because he had the "express permission" of Aero to operate the airplane that caused decedent's injuries.

The summary judgment record contains no evidence that Aero had repossessed or acquired the plane flown by Miikkulainen or that the plane was being flown for industrial aid or charter purposes. Aero's acquiescence in Bell Flight's conduct of its rental business does not rise to the level of "express permission." We find this definition inapplicable to Miikkulainen.

### (3) Policy Provided Coverage for Named Insured's "Lessee"

Appellants argue that "the policy clearly contemplates coverage of aircraft owned by the named insured's lessee and the operators of said aircraft." They base this conclusion on two terms of the policy. First, appellants misconstrue a policy declaration regarding the limits of aviation liability coverage which states, in part, "In the event the amount of aircraft operator's or lessee's insurance is less than US $250,000,000 any one occurrence, such insurance as is afforded by this Policy shall apply in excess of such other insurance." Appellants interpret this declaration to mean that the Lloyds policy will supplement any policy owned by any lessee, such as Bell Flight. They conclude that because Bell Flight has no such policy, Lloyds is liable for the entire judgment against Miikkulainen.

Second, appellants quote a condition of the aviation liability coverage requiring that any "lessee or mortgagor effect aircraft bodily injury, property damage and passenger insurance" naming Aero as an additional insured. The condition also states that "inadvertent omission by the Insured shall not prejudice the coverage provided under this Part II of the Policy." Appellants conclude that Bell Flight's lack of liability insurance is an "inadvertent omission" that should not prejudice the coverage provided by the Lloyds policy and that "[t]his proves as a matter of law that Bell Flight Training, Inc.'s aircraft is covered by Appellee's policy."

Appellants misapprehend the meaning of the word *lessee* in the declaration and the condition. Both refer to insurance carried by a party that is leasing or mortgaging *aircraft* of which Aero is the lessor or mortgagee. The declaration expressly refers to Aero's "interest as owner, lessor or lienholder of the aircraft or arising out of any other aircraft in which the Insured has a financial interest" and provides for payment on the policy only "in the event [Aero] does not receive indemnity under the operators policy carried by the *lessee/mortgagor*." (Emphasis added.) Likewise, the condition refers specifically to lease or loan instruments "concerning the aircraft insured hereunder" and not any other type of lease or loan instruments. Bell Flight's rental plane is not covered by either term.

## F.   Public Policy Considerations

Appellants argue that "[a]s a matter of public policy, Appellee Lloyds should be required to provide insurance coverage to cover the claims of appellants against the rental pilot flying an airplane under Aero FBO, Ltd.'s lease." Appellants maintain that Lease #1 and the standards are evidence of the City's intent to protect the public by making FBOs strictly liable for all aeronautical

17

activities authorized by their leases. This argument is founded on an erroneous reading of the City's standards. Appellants state that the standards required all FBOs "to carry rental pilot insurance coverage if rental operations were being conducted *from its* [sic] *premises*." (Emphasis added.) However, the standards *do not* require FBOs to insure all aeronautical activities conducted on the demised premises. They require that lessees carry coverage for those aeronautical activities *in which they are engaged.*[9] For example, the standards require that "[a]ny lessee *desiring to engage in the rental of aircraft to the public* must provide . . . Renter Pilot . . . insurance." (Emphasis added.)

Finally, even if Aero failed to comply with the lease requirements, Lloyds would not necessarily be liable for that failure. Public policy does not dictate that insurance companies monitor and attempt to enforce their clients' contracts with third parties.

For the above reasons, we conclude that Miikkulainen was not an omnibus insured on the policy issued by Lloyds to Aero. Given our disposition of this issue, we need not address appellants' remaining issues.

**CONCLUSION**

The summary judgment record conclusively establishes that appellants' judgment debtor, Miikkulainen, was not an insured under the Lloyds policy. The trial court properly granted Lloyds' motion for summary judgment and denied appellants' motion for summary judgment. The judgment of the district court is affirmed.

---

[9] At oral argument appellants' counsel conceded that the City accepted Aero's policy as satisfactory, although it did not provide renter pilot insurance.

18

_____

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Powers[*]

Affirmed

Filed: November 9, 2000

Publish

[*] Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).