**AFFIRM; and Opinion Filed October 29, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01418-CV

**PAIN CONTROL INSTITUTE, INC., Appellant**
**V.**
**GEICO GENERAL INSURANCE COMPANY, Appellee**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-10135**

## OPINION

Before Justices FitzGerald, Fillmore, and Stoddart
Opinion by Justice Fillmore

This appeal arises from a lawsuit brought by Pain Control Institute, Inc. (PCI) directly against GEICO General Insurance Company (GEICO), the automobile liability insurer of a driver who allegedly injured PCI's patient in a motor vehicle accident. PCI seeks payment for chiropractic treatment provided to its patient. Neither the driver of the vehicle nor PCI's patient are parties to this lawsuit. PCI asserts GEICO violated the Texas Uniform Commercial Code (the UCC) by failing to make payment to PCI pursuant to a partial assignment of rights to PCI by its patient. The trial court granted summary judgment in favor of GEICO and denied PCI's motion for summary judgment. Because Texas is not a direct action state, we affirm the trial court's judgment.

**Background**

On May 21, 2009, Jeanette Hooper was involved in a motor vehicle accident with David Cluck. GEICO issued an automobile liability insurance policy to Cluck that was in force on the date of the accident.

Hooper received chiropractic treatment at PCI for injuries she allegedly sustained in the motor vehicle accident. On May 21, 2009, prior to commencing treatment, Hooper signed a "Partial Assignment of the Causes of Action, Assignment of Proceeds Contractual Lien & Authorization" (Assignment). The Assignment provides in part:

> I hereby assign to [PCI], insofar as permitted by law, but only to the extent of my Charges, all of my rights, remedies, and benefits relating to any Payer, including . . . my right to receive Proceeds from any Payer now or in the future, and any and all causes of action that I might have against any Payer now or in the future, the right to prosecute such causes of action either in my name or in [PCI]'s name, and the right to settle or otherwise resolve such causes of action as [PCI] sees fit. I further grant a contractual lien to [PCI] with respect to my Charges. I further intend for this Agreement to create a secured interest under the applicable Uniform Commercial Code and hereby direct [PCI] to file the form(s) normally filed with the secretary of state or other governmental agency in order to perfect such lien. Consistent with these provisions, I hereby direct any and all Payers, to pay the Proceeds directly to, immediately to, and exclusively in the name of, [PCI] to the extent of my Charges.

In the Assignment, the term "Payer" is defined as "any insurance carrier, . . . at-fault party, individual, and any other entity, which may elect or be obligated to pay or disburse Proceeds to me, either now or in the future, for any reason," and the term "Proceeds" is defined to "include . . . the proceeds from any settlement, judgment, or verdict . . . ."

On May 28, 2009, PCI attempted to perfect the security interest referred to in the Assignment by filing a UCC Financing Statement (the Financing Statement) with the Texas Secretary of State. The Financing Statement identifies Hooper as the debtor and PCI as the secured party. The Financing Statement indicates it "covers the following collateral: Insurance

proceeds as defined by law and personal intangibles (including without limit, settlement proceeds) as defined by law."

In correspondence from PCI to GEICO dated June 2, 2009, PCI advised it was "currently treating [Hooper] for injuries sustained in an automobile accident with your insured. We understand that you are the third-party liability carrier and we will be sending copies of our patient's medical records and bills to your attention for final settlement." According to the correspondence, a copy of the Assignment and the Financing Statement "that was filed to perfect our medical lien and various notices regarding our right to direct payment under Texas law" were enclosed.

On August 18, 2009, December 16, 2009, and October 25, 2010, PCI forwarded correspondence to GEICO advising PCI had completed treatment of Hooper for injuries she allegedly sustained in the motor vehicle accident with Cluck. According to those letters, copies of medical and billing records for Hooper's treatment were enclosed "for final settlement," and the Financing Statement was also enclosed.

In exchange for consideration of $7,000, Hooper signed a "Release in Full of All Claims" (Release) on April 13, 2011, releasing and discharging Cluck and GEICO from any claim of injury or cause of action arising out of the May 21, 2009 motor vehicle accident. In the Release, Hooper acknowledged that liability for the motor vehicle accident was denied by Cluck and GEICO, and she agreed that the Release and settlement were not to be construed as an admission of liability on the part of Cluck or GEICO.

On April 16, 2012, PCI sent correspondence to GEICO stating its understanding that GEICO had settled with Hooper and paid settlement proceeds directly to Hooper's attorney without including PCI's name on the settlement check "in spite of the fact that [PCI has] a lien on this case." In the correspondence, PCI advised it had unsuccessfully attempted to collect

payment for Hooper's medical treatment from Hooper's attorney. PCI asserted its belief that GEICO's actions constituted a breach of an assignment and lien under the UCC. PCI demanded payment of $6,550.72, the "outstanding balance" for treatment rendered to Hooper. In GEICO's April 24, 2012 telecopied response to PCI, it stated, "Please be advised that this case has resolved with [Hooper]'s attorney and the statatue [sic] of limitations has run."

On September 4, 2012, PCI filed suit against GEICO asserting GEICO violated the UCC by making payment directly to Hooper and failing to make payment to PCI.[1] PCI sought damages of $6,550.72 and attorney's fees. In a verified pleading, GEICO denied it was liable to PCI in the capacity in which it had been sued. In that pleading, GEICO also asserted as affirmative defenses the two-year statute of limitations, and a statutory bar under sections 146.002 and 146.003 of the civil practice and remedies code resulting from PCI's failure to timely bill Medicare for the medical services it rendered to Hooper.

PCI filed a combined traditional and no-evidence motion for summary judgment, contending GEICO violated section 9.406(a) of the UCC by failing to make payment of insurance proceeds to PCI under a valid and enforceable assignment. PCI asserted in its traditional motion for summary judgment that there was no genuine issue of material fact regarding each and every element of its cause of action, and that it was entitled to judgment as a matter of law. PCI's traditional motion also claimed that "[a]n assignee may sue the insurance carrier directly for a violation of an assignment." PCI asserted in its no-evidence motion for summary judgment that GEICO "failed to offer any evidence to support its denial that it is not liable in the capacity in which it has been sued."

---

[1] In its petition, PCI asserts GEICO received notice that PCI had "been assigned the account of Hooper for the injuries sustained" and that the notice provides that "PCI request [sic] that [GEICO] honor [PCI's] lien by sending [PCI's] balance directly to [their] office, exclusively in [PCI's] company name." However, the record contains no "notice" from PCI to GEICO containing this language.

GEICO also moved for summary judgment. In its first amended motion for summary judgment, GEICO asserted it was entitled to judgment as a matter of law because the direct action by PCI against GEICO is not permitted by law, GEICO has no contractual or legal duty under its contract of insurance with Cluck to pay PCI for personal injuries allegedly caused by Cluck in the motor vehicle accident, GEICO is not an obligor or guarantor for any debt owed by Hooper to PCI, GEICO has no legal or statutory duty to pay PCI for a "lien" interest not recognized by Texas law, PCI has no recognized cause of action against GEICO under the UCC, the two-year statute of limitations bars recovery by PCI on any claim made against GEICO or Cluck, and PCI is statutorily barred under sections 146.001 through 146.003 of the civil practice and remedies code from collecting its unpaid bill from Hooper or any person or entity which may have been responsible for payment of her chiropractic bill.

Without delineating the grounds supporting the judgment, the trial court granted summary judgment in favor of GEICO. The trial court denied PCI's motions for summary judgment. PCI filed this appeal of the denial of its motions for summary judgment and the granting of GEICO's motion for summary judgment.

### Cause of Action Under the UCC

In its first issue, PCI contends the trial court erred "by ruling that PCI's cause of action against GEICO was not permitted by Texas law when an insurance carrier is liable to a medical provider for the insurance carrier's own misdeeds when the carrier failed to honor an assignment of which it had notice, in violation of [section 9.406(a) of the UCC]." In its seventh issue, PCI makes the related argument that the trial court erred by ruling PCI had no recognized cause of action against GEICO under the UCC. We address these issues together.

Section 9.406(a) of the UCC provides:

(a) Subject to Subsections (b)–(i), an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until,

but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.

TEX. BUS. & COM. CODE ANN. § 9.406(a) (West Supp. 2013). PCI asserts GEICO violated section 9.406(a) by making payment directly to Hooper.

*Summary Judgment Standards of Review*

The standards of review for traditional and no-evidence summary judgment are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and judgment should be rendered as a matter of law. TEX. R. CIV. P.166a(c); *Nixon*, 690 S.W.2d at 548–49. We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310. To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Gish*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i) .

In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if a reasonable fact-finder could, and we disregard evidence contrary to the nonmovant unless a reasonable fact-finder could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Gish*, 286 S.W.3d at 310. When both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all

questions presented. *Fielding*, 289 S.W.3d at 848. If the trial court's order does not state the grounds on which summary judgment was granted, we will affirm if any of the theories advanced by the summary judgment movant are meritorious. *State Farm Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

*Direct Action Against Insurance Company*

"Texas is not a direct action state." *Ohio Cas. Ins. Co. v. Time Warner Entm't Co.*, 244 S.W.3d 885, 888 (Tex. App.—Dallas 2008, pet. denied) (quoting *Jones v. CGU Ins. Co.*, 78 S.W.3d 626, 629 (Tex. App.—Austin 2002, no pet.)). In other words, "[a] tort claimant has no direct cause of action against the tortfeasor's liability insurer until the insured-tortfeasor is adjudged liable to the tort claimant." *Id.*; *see also State Farm Cnty. Mut. Ins. Co. of Tex. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989) (per curiam) ("[A third party injured by an insured] cannot enforce the policy directly against the insurer until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party."); *Lowe v. Safeco Ins. Co.*, No. 05-02-01531-CV, 2003 WL 21731306, at *2 (Tex. App.—Dallas July 28, 2003, pet. denied) (mem. op.) (motorist injured in automobile accident could not bring direct action against other driver's insurer); *CGU Ins. Co.*, 78 S.W.3d at 629 (tort claimant has no direct cause of action against tortfeasor's liability insurer until insured-tortfeasor is adjudged liable to tort claimant); *Jun v. Lloyds & Other Various Insurers*, 37 S.W.3d 59, 63 (Tex. App.—Austin 2000, pet. denied) (plaintiff generally may not bring direct action against an insurer; limited exception allows a third party to sue an insurer if liability of an insured has been established by judgment or written agreement with insurer); *see also* TEX. R. CIV. P. 51 (whenever claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, claims may be joined in single action, but court shall grant relief in that action only in accordance with relative substantive rights of parties; rule shall not be applied in tort cases so

as to permit joinder of liability or indemnity insurance company "unless such company is by statute or contract directly liable to the person injured or damaged"). This well-settled rule is based on sound public policy favoring prevention of the conflict of interest that could arise if a third-party claimant were permitted to sue an insurer before obtaining judgment against the insured. *Time Warner Entm't Co.*, 244 S.W.3d at 888–89; *see also Lyons v. Ayala*, 723 S.W.2d 254, 257 (Tex. App.—Fort Worth 1986, no writ) (recognizing "long standing prohibition against direct action suits against insurance companies as provided by [Texas Supreme Court's] ruling in *Kuntz v. Spence*, 67 S.W.2d 254 (Tex. Comm'n App. 1934, holding approved)").

*Assignment*

"An assignment is a manifestation by the owner of a right of that person's intention to transfer such right to the assignee." *Hermann Hosp. v. Liberty Life Assur. Co. of Boston*, 696 S.W.2d 37, 44 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). To recover on an assigned cause of action, the party claiming the assigned right must show that the cause of action being assigned existed and was assigned to the party alleging assignment occurred. *Allodial Ltd. P'ship v. N. Tex. Tollway Auth.*, 176 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied); *Tex. Farmers Ins. Co. v. Gerdes*, 880 S.W.2d 215, 217 (Tex. App.—Fort Worth 1994, writ denied) (to recover on assigned cause of action, party claiming assigned rights must prove cause of action existed that was capable of assignment and cause was assigned to party seeking recovery); *see also John H. Carney & Assocs. v. Tex. Prop. & Cas. Ins. Guar. Ass'n*, 354 S.W.3d 843, 850 (Tex. App.—Austin 2011, pet. denied) (assignee "stands in the shoes" of assignor but acquires no greater right than assignor possessed) (quoting *Deer Park Bank v. Aetna Ins. Co.*, 493 S.W.2d 305, 306 (Tex. Civ. App.—Beaumont 1973, no writ); *Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 399 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (to recover on assigned cause of action, one must plead and prove "a cause of action capable of being assigned *existed and was assigned*" to party alleging theory of assignment).

*Analysis*

In this appeal, we are asked to conclude that by virtue of Hooper's partial assignment of rights to PCI and PCI's filing of a Financing Statement with the Texas Secretary of State, the UCC conferred upon PCI a direct action against Cluck's automobile liability insurer for costs related to Hooper's treatment by PCI. We decline to do so for the reasons that follow.

PCI brought suit against GEICO for payment premised on the Assignment. PCI contends that, by virtue of the Assignment, it is entitled to sue GEICO directly under the UCC as an "account debtor" for the costs related to Hooper's treatment.[2] In its appellate brief, PCI states, "the Assignment assigns to PCI the right to directly receive any payment made by . . . GEICO owed to [Hooper] as a result of . . . [GEICO] accepting liability for the auto accident." The deficiency in PCI's argument is that this record contains no proof Cluck's or GEICO's liability to Hooper has ever been determined by judgment or agreement. *See Ollis*, 768 S.W.2d at 723 (prohibiting direct action against third-party's insurer "until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party"). To the contrary, Hooper acknowledged in the Release that liability for the motor vehicle accident was denied by Cluck and GEICO, and she agreed that the Release and settlement were not to be construed as an admission of liability on the part of Cluck or GEICO. *See id.* (settlement agreement contained provision expressly denying liability; no legal obligation to pay damages arises from settlement agreement entered into by parties to "buy peace"); *CGU Ins. Co.*, 78 S.W.3d at 628–29 (trial court correctly determined there was no legal basis for injured party to sue alleged tortfeasor's liability insurer; injured party was not in privity with liability insurer and was simply tort claimant against alleged tortfeasor who had settled with her). An existing right

---

[2] As defined in section 9.102(a)(3) of the UCC, an account debtor means "a person obligated on an account, chattel paper or general intangible." TEX. BUS. & COM. CODE ANN. § 9.102(a)(3) (West Supp. 2013).

is a precondition for a valid assignment. PCI's rights as an assignee are no greater than Hooper's rights as an assignor. *John H. Carney & Assocs.*, 354 S.W.3d at 850. Hooper had no direct right of action against GEICO either at the time she executed the Assignment or thereafter; therefore, no right to a direct action against GEICO was granted by Hooper to PCI as a result of the Assignment. *Pape Equip. Co.*, 737 S.W.2d at 399. While the Financing Statement is alleged by PCI to have secured the interest granted by the Assignment, a direct action against GEICO was not granted by the Assignment.

Moreover, PCI's claim is based upon section 9.406 of the UCC. Section 9.109(d)(12) of the UCC provides that the Code does not apply to "[a]n assignment of a claim arising in tort, other than a commercial tort claim. . . ." TEX. BUS. & COM. CODE ANN. § 9.109(d)(12) (West Supp. 2013).[3] PCI does not contend it treated Hooper for injuries sustained as a result of a commercial tort; rather, the record establishes Hooper was treated by PCI for injuries sustained in an automobile accident with GEICO's insured—a tort claim for personal injury. Section 9.109(d)(12) expressly states the UCC does not apply to an assignment of such a claim arising in tort. *Id.* Further, section 9.109(d)(8) of the UCC provides that the UCC does not apply to "a transfer of an interest in or an assignment of a claim under a policy of insurance, other than an assignment by or to a health care provider of a health-care insurance receivable and any subsequent assignment of the right to payment. . . ." TEX. BUS. & COM. CODE ANN. § 9.109(d)(8) (West Supp. 2013).[4] The Assignment does not relate to a health care insurance receivable.

---

[3] "Commercial tort claim" means a claim arising in tort with respect to which the claimant is an organization or the claimant is an individual and the claim arose in the course of the individual's business or profession and does not include damages arising out of personal injury or death of an individual. TEX. BUS. & COM. CODE ANN. § 9.102(13) (West Supp. 2013).

[4] We also note that in 2001, the Texas Legislature enacted Senate Bill No. 433. Section 25 of the bill provides as follows:

Nothing in [the UCC], as effective July 1, 2001, shall apply to a claim or right to receive:

(1) compensation for injuries or sickness as described by 26 U.S.C. Section 104(a)(1) or (2) . . . .

Further, case authority cited by PCI does not support PCI's argument regarding applicability of section 9.406(a) of the UCC. For example, PCI cites *Seay v. Travelers Indemnity Co.*, 730 S.W.2d 774 (Tex. App.—Dallas 1987, no writ), for the proposition that "insurance companies are directly liable for their own misdeeds and, thus, are not immune from suit under [the UCC]." However, in *Seay*, the issue was whether an insurer who voluntarily undertook a task necessary for the protection of a third person—inspection of its insured's water boilers—may be held liable to employees of its insured for allegedly failing to exercise reasonable care in the undertaking. *Id.* at 777. *Seay* is not dispositive of PCI's claim against GEICO pursuant to section 9.406(a) of the UCC. PCI also relies upon *Bradshaw v. White*, No. 08-03-00186-CV, 2004 WL 1045469 (Tex. App.—El Paso May 6, 2004, no pet.) (mem. op.). *Bradshaw* does not support PCI's claim against GEICO. In *Bradshaw*, a chiropractor's patient assigned a portion of her personal injury claim following an accident to the chiropractor in order to pay for the chiropractic services she received. *Id.* at *1. The patient's attorney received proceeds of the patient's personal injury claim settlement but refused to honor the patient's assignment of a portion of her personal injury claim to the chiropractor. *Id.* The court of appeals concluded the assignment of a portion of her personal injury claim to the chiropractor was not invalid. *Id.* at *3. However, there was no contention in that case that the patient had a claim against an alleged tortfeasor's insurer that could be executed upon by the injured party's assignee. Neither

Act of May 11, 2001, 77th Leg., R.S., ch. 350, §25, 2001 Tex. Gen. Laws 1403, 1414. 26 U.S.C. section 104(a)(1) refers to amounts received under workmen's compensation acts as compensation for personal injuries or sickness, and section 104(a)(2) refers to "damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of physical injuries or physical sickness." 26 U.S.C.A., § 104(a)(1) & (2) (2002).

*Bradshaw* nor this case involve a protection letter from an injured party's attorney to a health care provider promising "protection" for medical bills at the time of settlement with a tortfeasor.

*Conclusion*

Hooper could assign to PCI no greater rights or interests than she possessed. *John H. Carney & Assocs.*, 354 S.W.3d at 850. Hooper had no right to maintain a direct action against GEICO. *Time Warner Entm't Co.*, 244 S.W.3d at 888; *see also Ollis*, 768 S.W.2d at 723. Further, the UCC does not apply to an assignment of rights concerning a tort claim for personal injuries. TEX. BUS. & COM. CODE ANN. § 9.109(d)(12). Nor does the UCC apply to an assignment of a claim under a policy of insurance, other than an assignment by or to a health care provider of a health-care insurance receivable and any subsequent assignment of the right to payment. *Id*. at § 9.109(d)(8). Accordingly, PCI cannot demonstrate, as a matter of law, a basis for requiring GEICO to protect the Assignment. We conclude the trial court did not err in granting summary judgment in favor of GEICO and denying PCI's motions for summary judgment. We resolve PCI's first and seventh issues against it.

**Legal or Statutory Duty to Pay PCI**

In its fourth issue, PCI contends the trial court erred by ruling that PCI could not sue GEICO in the capacity of an obligor or guarantor for the debt owed PCI. In its sixth issue, PCI makes the related argument that the trial court erred by ruling that GEICO had no legal or statutory duty to pay PCI. We address these issues together.

In its appellate brief, PCI acknowledged the trial court did not err by ruling that GEICO had no contractual duty under its insurance contract with Cluck to pay PCI as a third-party beneficiary. However, PCI asserts the trial court erred by ruling that GEICO had no duty under section 9.406(a) of the UCC to comply with a valid assignment of which it had notice. PCI also argues that it "has never claimed a lien of any sort" against GEICO; instead it claims its UCC

–12–

Financing Statement is a "reservation and notice of right to receive payment." Having concluded the trial court did not err in granting summary judgment in favor of GEICO and denying PCI's motions for summary judgment because the UCC does not afford PCI a direct action against GEICO for costs related to treatment PCI rendered to Hooper, we resolve PCI's fourth and sixth issues against it.

## Contractual Duty and Breach of Contract

PCI states its third issue as follows: "[d]id the Trial Court err by ruling that GEICO has no contractual or legal duty under its contract of insurance to pay PCI?" PCI poses a related question in its fifth issue: "[d]id the Trial Court err by ruling that GEICO cannot be held liable to PCI for breach of contract?" We address these issues together. Notwithstanding PCI's assertion of these two issues, it readily acknowledges in its appellate brief that its cause of action does not arise out of a "third-party breach of contract claim under the provisions of the insurance contract," and that the trial court did not err "by ruling that GEICO had no contractual duty to pay PCI under its insurance contract" with Cluck. Furthermore, as noted above, the record contains no proof Cluck's or GEICO's liability to Hooper has ever been determined by judgment or agreement. *See Ollis*, 768 S.W.2d at 723. Having concluded the trial court did not err in granting summary judgment in favor of GEICO and denying PCI's motion for summary judgment because Hooper and PCI, as her assignee, had no right, contractual or otherwise, to a direct action against GEICO for costs related to Hooper's chiropractic treatment, we resolve PCI's third and fifth issues against it.

## Statute of Limitations and
## Chapter 146 of the Civil Practice and Remedies Code

In its second issue, PCI asserts the trial court erred by ruling that PCI's alleged cause of action against GEICO was governed by a two year statute of limitations. In its eighth issue, PCI asserts the trial court erred by ruling that PCI was barred from recovery against GEICO under

–13–

chapter 146 of the civil practice and remedies code for failing to timely submit invoices for Hooper's chiropractic treatment to Medicare.

Where, as here, the summary judgment does not state the grounds upon which it was granted, the nonmovant must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *Caldwell v. Curioni*, 125 S.W.3d 784, 789 (Tex. App.—Dallas 2004, pet. denied). Having concluded the trial court did not err in granting summary judgment in favor of GEICO and denying PCI's motions for summary judgment because PCI may not maintain a direct action against GEICO for costs related to treatment PCI rendered to Hooper, we need not address PCI's challenge to the summary judgment on the independent grounds of the statute of limitations or under sections 146.001 through 146.003 of the civil practice and remedies code. *See* TEX. R. APP. P. 47.1.

## Conclusion

We conclude the trial court did not err by granting GEICO's motion for summary judgment or by denying PCI's motions for summary judgment. We affirm the trial court's judgment.

/Robert M. Fillmore/
————————————————
ROBERT M. FILLMORE
JUSTICE

131418F.P05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PAIN CONTROL INSTITUTE, INC.,
Appellant

No. 05-13-01418-CV          V.

GEICO GENERAL INSURANCE
COMPANY, Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-12-10135.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Stoddart
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee GEICO General Insurance Company recover its costs of this appeal from appellant Pain Control Institute, Inc.

Judgment entered this 29th day of October, 2014.