# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00385-CV

**John H. Carney & Associates, Appellant**

**v.**

**Texas Property and Casualty Insurance Guaranty Association, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GN-08-001404, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

John H. Carney & Associates ("Carney" or "the Carney law firm") sued the Texas Property and Casualty Insurance Guaranty Association ("the Association") to recover damages it was awarded in a judgment against an insolvent insurance company, Texas Select Lloyds Insurance Company ("Texas Select"). Carney contends that the judgment constitutes a "covered claim" under former article 21.28-C, section 5(8) of the Texas Property and Casualty Insurance Guaranty Act ("the Guaranty Act")[1] because the judgment was based on an assigned interest in the proceeds of a

---

[1] Act of May 30, 2005, 79th Leg., R.S., ch. 995, § 3, 2005 Tex. Gen. Laws 3307, 3360 (repealed 2005) (current version at Tex. Ins. Code Ann. §§ 462.201-.203, .205-.210, .213-.214, .305 (West 2009)). Unless otherwise stated, all references to the Guaranty Act are based on the 2006 version of the law, the version in effect when Texas Select went into receivership. *See Campos v. Texas Prop. & Cas. Ins. Guar. Ass'n*, 282 S.W.3d 226, 228 n.1 (Tex. App.–Austin 2009, no pet.) (determining that applicable version of Guaranty Act is one in effect when insurer became impaired). The parties cite to the current version of the statute, Tex. Ins. Code Ann. §§ 462.002-.351 (West 2009), which is a nonsubstantive codification of the statute with an effective date of April 1, 2007.

first-party claim under a homeowners policy that Texas Select issued. The Association moved for summary judgment on a number of grounds, including that the Carney law firm is not entitled to seek compensation under the Guaranty Act as an assignee of the insured. The trial court granted the motion without specifying the grounds on which summary judgment was based. We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The Association is a statutorily created entity whose purpose is to pay "covered claims" of impaired insurance companies doing business within the state.[2] By assessing contributions from solvent member insurers, the Association maintains a guaranty fund that assumes insolvent insurers' obligations with respect to statutorily defined "covered claims."[3] Because the Association was established for the purpose of providing a limited form of protection for policyholders and

---

[2] *See generally* art. 21.28-C §§ 1-27, Act of Aug. 25, 1991, 2d C.S., ch. 12, § 1.20, 1991 Tex. Gen. Laws 252, 264-73, *amended by* Act of May 30, 1993, 73d Leg., R.S., ch. 685, §§ 9.01-.22, 1993 Tex. Gen. Laws 2559, 2632-37, *amended by* Act of May 16, 1995, 74th Leg., R.S., ch. 275, 1995 Tex. Gen. Laws 2616, *amended by* Act of May 27, 1995, 74th Leg., R.S., ch. 1055, §§ 3-11, 1995 Tex. Gen. Laws 5216, 5218-20, *amended by* Act of June 1, 1997, 75th Leg. R.S., ch. 594, § 1.13, 1997 Tex. Gen. Laws 2076, 2078, *amended by* Act of May 22, 1997, 75th Leg., ch. 764, § 1, 1997 Tex. Gen. Laws 2475-76; *amended by* Act of June 1, 1997, 75th Leg., R.S., ch. 1412, § 1, 1997 Tex. Gen. Laws 5289, 5289-90, *amended by* Act of May 22, 1997, 75th Leg., R.S., ch. 1423, §§ 11.52-.53, 1997 Tex. Gen. Laws 5329, 5399, *amended by* Act of May 30, 1999, 76th Leg., R.S., ch. 1126, §§ 5, 6, 1999 Tex. Gen. Laws 4009, 4013, *amended by* Act of May 30, 2003, 78th Leg., R.S., ch. 1218, §§ 1-7, 2003 Tex. Gen. Laws 3458, 3458-62, *amended by* Act of May 30, 2005, 79th Leg., R.S., ch. 995, §§ 2-8, 2005 Tex. Gen. Laws 3307, 3359-362 (repealed 2005) (current version at Tex. Ins. Code Ann. §§ 462.002-.351).

[3] Article 21.28–C § 5(8), Act of May 30, 2005, 79th Leg., R.S., ch. 995, § 3, 2005 Tex. Gen. Laws 3307, 3360 (repealed 2005) (current version at Tex. Ins. Code Ann. §§ 462.201-.203, .205-.210, .213-.214, .305).

third-party claimants in the event of insurer insolvency, some claims that might otherwise be compensable if presented to a solvent insurer are excluded from coverage under the Guaranty Act.[4]

This action against the Association has its origins in a dispute over attorney's fees between the Carney law firm, a Dallas-based firm, and its former client, Joy Lincoln. Lincoln hired the firm to represent her in a claim for residential mold damage against her homeowners insurer, Texas Select. In the attorney-client agreement, Lincoln agreed to pay Carney "forty percent (40%) of all money received and property collected, or debt from which [Lincoln] is relieved, including any sums paid for property damage, remediation, and alternative living expenses." The fee agreement was secured by an assignment of an interest in Lincoln's claim against Texas Select, but not an assignment of the insurance policy itself:

> To secure the performance of Client's obligations to Attorney, the Client hereby transfers and assigns to the Attorney an undivided interest in the Client's claim, such interest being equivalent to the amount of percentage that the Client, by this Agreement, promises to pay for the services of the Attorney. Attorney is authorized to execute a UCC-1 security agreement to evidence this lien.

Lincoln also agreed not to settle the lawsuit without the Carney law firm's approval:

> No settlement of any nature shall be made for any of the aforesaid claims of the Client without the complete approval of the Client, and all offers of settlement shall be communicated to the Client; the Client shall not obtain any settlement on the aforesaid claims without the complete approval of the Attorney.

---

[4] *See id.*

Less than a year after Carney prepared and filed Lincoln's lawsuit against Texas Select, Lincoln discharged the Carney law firm and retained David Gibson, a former associate at the firm. One day later, Lincoln executed a partial settlement agreement with Texas Select. Before Texas Select made payment on the partial settlement, Carney sent a letter to Texas Select and its attorney advising them of the change in Lincoln's legal representation and notifying them of Carney's assigned interest. Carney also requested that "all payments, ALE,[5] settlements [sic] distributions or otherwise" be made jointly payable to the Carney law firm. In accordance with Carney's request, the partial settlement payment was made payable to Lincoln, Gibson, and the Carney law firm. To further protect its interests in the assigned matter, the Carney law firm intervened in the pending lawsuit against Texas Select. The intervention was subsequently severed into a separate cause, and when Texas Select settled Lincoln's remaining claims in the mold case for $200,000.00, the payment was made only to Lincoln and Gibson, without the Carney law firm's consent.

The course of the ensuing litigation among the relevant parties is less than clear from the record and the parties' briefs. It appears that the intervention proceeding continued after Lincoln's claims were settled, and Lincoln filed a counterclaim of an unknown nature against Carney. According to Carney's brief, Carney and Lincoln later executed a partial settlement and limited release of unspecified claims in the severed intervention proceeding. The terms of the settlement agreement have not been disclosed in this proceeding. Aside from the partial settlement

---

[5] We assume "ALE" is an acronym for adjusted living expenses.

and release, it is unclear how, when, or if the intervention case was ultimately resolved and what role, if any, Texas Select and Gibson played in that proceeding.

While the intervention proceeding was pending, however, Carney sued Texas Select in a separate lawsuit in the County Court at Law for Dallas County, and it is that proceeding that plays a central role in the Carney law firm's claim against the Association. In the lawsuit against Texas Select, the Carney law firm claimed it was entitled to attorney's fees pursuant to the contingency fee agreement with Lincoln and alleged that Lincoln and Texas Select knowingly and improperly circumvented Carney's assigned interest when they settled the mold case. The Carney law firm brought suit in its own name pursuant to the assignment from Lincoln and asserted both first-party claims under Lincoln's insurance policy and extra-contractual claims, including claims for deceptive trade practices under former article 21.21 of the Texas Insurance Code, unfair claims practices under former article 21.55 of the insurance code, breach of the duty of good faith and fair dealing, negligence, negligence per se, negligent misrepresentation, and intentional infliction of emotional distress. Alternatively, and in lieu of recovering actual and exemplary damages on the foregoing claims, Carney sought to ratify the disputed settlement agreement and take 40% of the $200,000.00 settlement that Lincoln executed with Texas Select.

Following a bench trial, the county court at law awarded Carney $80,000.00, plus pre-judgment interest, post-judgment interest, and court costs.[6] Texas Select perfected an appeal,

---

[6] The damages awarded were equal to 40% of the $200,000.00 settlement proceeds, strongly suggesting that judgment was awarded based on the terms of the settlement agreement and assignment. However, there are no findings of fact or conclusions of law in the summary judgment record, and we cannot ascertain with certainty the basis or bases for the court's judgment.

5

but while the appeal was pending, Texas Select was designated an impaired insurer and placed into receivership. When the appeal was abated pursuant to the automatic stay provisions of former article 21A.008(d) of the insurance code,[7] Carney presented the judgment to the Association for payment under the Guaranty Act, but the Association denied the claim.[8]

The Carney law firm then filed the underlying lawsuit, alleging that the Association erroneously denied its claim on the basis of a provision in the Guaranty Act that excludes attorney's fees from the definition of a "covered claim."[9] The firm did not dispute that attorney's fees are not compensable under the Act; rather, it asserted that, in characterizing its claim as one for attorney's fees, the Association improperly focused on the reason for the assignment—to secure payment of attorney's fees—rather than the nature of the claim, which was an assigned undivided interest in a first-party claim against the insurer. Carney alleged that, as an assignee of an interest in the insured's post-loss claims under the insurance policy, the law firm was entitled to compensation under the Act to the same extent as if it were a named insured.

The Association moved for summary judgment, challenging both the compensability of Carney's claim under the Guaranty Act and the validity of the assignment. Specifically, the Association alleged that, as a matter of law, Carney did not have a covered claim because (1) Carney was neither an insured nor a loss payee at the time of the insured events, and the assignment was

---

[7] Act of May 30, 2005, 79th Leg., R.S., ch. 995, § 1, 2005 Tex. Gen. Laws 3307, 3314-15 (redesignated 2007) (current version at Tex. Ins. Code Ann. § 443.008(d) (West 2009)).

[8] There is no indication in the record as to whether the Carney law firm also filed a claim with the receivership estate based on its judgment.

[9] Article 21.28–C § 5(8), Act of May 30, 2005, 79th Leg., R.S., ch. 995, § 3, 2005 Tex. Gen. Laws 3307, 3360 (repealed 2005) (current version at Tex. Ins. Code Ann. § 462.208).

ineffective to confer standing as an insured under the Guaranty Act; (2) the assignment was invalid because Texas Select did not consent in writing to the assignment, as required by the policy; (3) claims for attorney's fees are not compensable under the Act; and (4) relevant policy limits had already been exhausted. The Association also asserted that there was no evidence that Carney had an insurable interest in the premises at the time of the insured events and no evidence that Carney's claim was within the limits and coverage of Lincoln's policy, considering the exhaustion of relevant policy limits and the policy's exclusion for loss caused by mold.

In response, the Carney law firm argued that its liquidated claim against Texas Select must be honored under the Guaranty Act because the claim meets the statutory definition of a "covered claim" and no exception applies. Carney further asserted that the Association was bound by the judgment against Texas Select and could not contest the validity of the assignment or coverage under the Texas Select policy, including the applicability of any policy exclusions. Carney also maintained that the assignment of Lincoln's post-loss claims under the policy was valid even without Texas Select's consent and conferred standing to make a claim under the Guaranty Act in the absence of any express statutory limitation to the contrary.

The trial court granted the Association's motion without stating the grounds, and Carney perfected this appeal.

**STANDARD OF REVIEW**

Whether summary judgment is proper is a question of law that we review de novo, viewing the evidence in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences unless a reasonable fact-finder could not. *City of Keller v. Wilson*,

7

168 S.W.3d 802, 822 (Tex. 2005); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "Traditional" summary judgment is proper if (1) there is no genuine issue of material fact, and (2) the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A defendant who conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003). "To prevail on a no-evidence summary-judgment motion, a movant must allege that there is no evidence of an essential element of the adverse party's claim." *Southwest Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing Tex. R. Civ. P. 166a(i)). The burden then shifts to the nonmovant to produce more than a scintilla of probative evidence to support each challenged element of its claims, and absent such evidence, the movant is entitled to summary judgment. *Forbes, Inc. v. Granada Biosciences*, 124 S.W.3d 167, 172 (Tex. 2003). When the trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm summary judgment if any of the grounds asserted in the summary-judgment motion are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## DISCUSSION

The Guaranty Act provides a partial safety net to policyholders and third-party claimants in the event of insurer insolvency by supplying a mechanism for the timely payment of covered claims under certain insurance policies.[10] The Association is not an insurance company, and

---

[10] *See* Article 21.28-C § 2, Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 12, § 1.20, 1991 Tex. Gen. Laws 252, 264 (repealed 2005) ("The purpose of this Act is to: (1) provide a mechanism for

8

its duties are not co-extensive with the insolvent insurer's obligations under its policies: "[T]he association shall not be considered to be in the business of insurance, shall not be considered to have assumed or succeeded to any liabilities of the impaired insurer, and shall not be considered to otherwise stand in the shoes of the impaired insurer for any purpose . . . ."[11] Rather, the Association is a statutory entity that depends on the Guaranty Act for its existence and for the definition of the scope of its powers, obligations, and protections.

Under the Guaranty Act, the Association's authority is limited to the payment of "covered claims" as that term is defined by the Act:

> "Covered claim" means an unpaid claim of *an insured or third-party liability claimant* that arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which the Act applies, issued or assumed (whereby an assumption certificate is issued to the insured) by an insurer licensed to do business in this state, if that insurer becomes an impaired insurer and the third-party claimant or liability claimant or insured is a resident of this state at the time of the insured event, or the claim is a first-party claim for damage to property that is permanently located in this state.[12]

---

the payment of covered claims under certain insurance policies to avoid excessive delay in payment; (2) avoid financial loss to claimants or policyholders because of the impairment of an insurer; (3) assist in the detection and prevention of insurer insolvencies; and (4) provide an association to assess the cost of that protection among insurers.") (current version at Tex. Ins. Code Ann. § 462.002 (West 2009)).

[11] Article 21.28-C § 8(b), Act of May 27, 1995, 74th Leg., R.S., ch. 1005, § 6, 1995 Tex. Gen. Laws 5216, 5219 (repealed 2005) (current version at Tex. Ins. Code Ann. § 462.102 (West 2009)).

[12] Article 21.28–C § 5(8), Act of May 30, 2005, 79th Leg., R.S., ch. 995, § 3, 2005 Tex. Gen. Laws 3307, 3360 (repealed 2005) (current version at Tex. Ins. Code Ann. § 462.201) (emphasis added).

9

The definition of "covered claim" does not include all claims that might have been compensable by the insurer had it not become insolvent. For example, the remedy the Act provides is not available to any claimant who was not a Texas resident at the time of the insured event, unless the claim is a first-party claim involving property permanently located in this state.[13] The exception to the residency requirement for first-party property damage claims reflects yet another limitation in coverage because it excludes nonresident third-party liability claimants even if their claims involve property that is permanently located in this state and even though a nonresident first-party claimant could recover in the same circumstances.[14] Certain categories of damages are also expressly excluded from the definition of covered claims, including attorney's fees, court costs, and punitive, exemplary, extra-contractual, and bad-faith damages.[15] Likewise, an insurer who holds subrogation rights against an insolvent insurer or its insured cannot utilize the remedy provided in the Guaranty Act to satisfy its claim.[16] And, for those claims that are covered, there is an aggregate statutory cap of $300,000.00, except for workers'

---

[13] *Id.*

[14] *Id.*

[15] *Id.* ("'Covered claim' shall not include supplementary payment obligations, including adjustment fees and expenses, attorney's fees and expenses, court costs, interest and penalties, and interest and bond premiums incurred prior to the determination that an insurer is an impaired insurer under this Act . . . [or] any claim for recovery of punitive, exemplary, extracontractual, or bad-faith damages . . . .") (current version at Tex. Ins. Code Ann. §§ 462.208, .210).

[16] *Id.* ("'Covered Claim' shall not include . . . any amount that is directly or indirectly due any reinsurer, insurer, self-insurer, insurance pool, or underwriting association, as subrogation recoveries, reinsurance recoveries, contribution, indemnification, or otherwise, and the insured of an impaired insurer is not liable . . . for any [such] recovery . . . to the extent of the applicable liability limits of the policy written and issued to the insured by the insolvent insurer.") (current version at Tex. Ins. Code. Ann. § 462.207).

compensation claims, which are to be paid in full.[17] The presence of these limitations demonstrates that the legislature intended for the Guaranty Act to cover some, but not all, losses. *See Unisys Corp. v. Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Assoc.*, 943 S.W.2d 133, 140 (Tex. App.—Austin 1997, writ denied).

The Association contends, among other things, that Carney's loss is not one the Act exists to help remunerate because the Carney law firm is neither an insured nor a third-party liability claimant. The firm responds, however, that it "stands in the shoes" of a named insured by virtue of an assigned interest in Lincoln's first-party property damage claims under the Texas Select policy. According to Carney, once Lincoln suffered a covered loss, her right to payment under the Texas Select policy became an alienable chose in action that was validly assigned to Carney and was subsequently reduced to an unassailable judgment that must be honored under the Guaranty Act as if Lincoln were presenting the claim herself. At the same time, Carney asserts that the Association is not entitled to defenses that might have been available if Lincoln were seeking compensation, including defenses based on the release she signed with Texas Select, applicable policy exclusions, and the right to an offset for amounts Texas Select previously paid to Lincoln.

Although the Carney law firm received a partial assignment of Lincoln's right to payment under the Texas Select policy, it is undisputed that the insurance policy itself was not assigned to Carney and Carney is not otherwise a named insured thereunder. However, the general

---

[17] *Id.* ("Individual covered claims (including any and all derivative claims by more than one person which arise from the same occurrence, which shall be considered collectively as a single claim under this Act) shall be limited to $300,000, except that the association shall pay the full amount of any covered claim arising out of a workers' compensation claim made under a workers' compensation policy.") (current version at Tex. Ins. Code Ann. § 462.213).

rule is that the right to sue for money damages is a chose in action, which is a property right that can be assigned unless assignment is prohibited by statute or is contrary to public policy. *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 707 (Tex. 1996) ("[F]ree alienation of choses in action [is] the general rule, but . . . [e]ven today, the general rule is that a contractual assignment may be 'inoperative on grounds of public policy.'" (citing Restatement (Second) of Contracts § 317(e)(b) (1981)); *Seiter v. Marschall*, 147 S.W. 226 (Tex. 1912) (observing that assignment of partial interest in assignor's cause of action conveyed after adverse judgment on claim could be prosecuted in assignor's name on appeal to extent of assignee's interest in claim); *Camden Fire Ins. Ass'n v. Eckel*, 14 S.W.2d 1020, 1021-22 (Tex. Comm'n. App. 1929, judgm't adopted) (holding that insurance company could sue in insured's name following assignment of insured's interest against tortfeasor); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 390 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd) ("'[E]verything which can be called a debt can be assigned, and the assignee may recover either in his own name or in that of his assignor. In other words, any chose in action may be assigned and suit brought thereon by the equitable holder.'" (quoting *Citizens State Bank v. O'Leary*, 167 S.W.2d 719, 721 (Tex. 1942))); *Renger Mem'l Hosp. v. Texas,* 674 S.W.2d 828, 830 (Tex. App.—Austin 1994, no writ) ("A cause of action is a property right and may be assigned except where such assignment is expressly prohibited by statute." (citations omitted)). An assignee "stands in the shoes" of the assignor but acquires no greater right than the assignor possessed. *Deer Park Bank v. Aetna Ins. Co.*, 493 S.W.2d 305, 306 (Tex. Civ. App.—Beaumont 1973, no writ) (quoting *Gulf Coast Factors, Inc. v. Hamilton Supply Co.*, 389 S.W.2d 341, 346 (Tex. Civ. App.—Houston 1965, no writ)). The issue presented in this case is whether the Guaranty Act trumps these general

common-law principles concerning assignments. As we see it, this threshold issue is not about the validity of the assignment but rather concerns the availability of the particular remedy the Guaranty Act is intended to provide.

### Statutory Construction Principles

Whether an assignee can recover as an "insured" under the Guaranty Act is a matter of statutory construction, which is a question of law. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). Our primary objective in construing statutes is to give effect to the legislature's intent, which we seek "first and foremost" in the statutory text. *Id*. Absent legislative definition, we rely on the plain meaning of the text unless a different meaning is apparent from the context or application of the plain language would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). We look to the entire act in determining the legislature's intent with respect to specific provisions. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011); *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 607 (Tex. App.—Austin 2000, pet. denied).

"When a statute's language is nebulous and '[t]he point of disagreement lies between two plausible interpretations,' we resort to additional construction aids to divine the Legislature's intent." *In re Smith*, 333 S.W.3d 582 (Tex. 2011) (quoting *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 355 (Tex. 2009) (alteration in original)). The Code Construction Act outlines a number of factors that may be considered to aid construction, including the:

13

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provisions.

Tex. Gov't Code Ann. § 311.023 (West 2005). In addition, the Guaranty Act requires that it "be liberally construed to effect the purposes . . . of this Act, which will constitute an aid and guide to interpretation."[18]

### *Interpretation and Application of the Guaranty Act*

The Guaranty Act's plain language limits "covered claims" to unpaid claims of "insureds" and "third-party claimants." The term "insured" is not defined in the Act, but the term "claimant" is defined as "any insured making a first-party claim or any person instituting a liability claim. A person who is an affiliate of the impaired insurer may not be a claimant."[19] Assignees are

---

[18] Article 21.28-C § 4, Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 12, § 1.20, 1991 Tex. Gen. Laws 252, 264 (repealed 2005) (current version at Tex. Ins. Code Ann. § 462.003 (West 2009)).

[19] Article 21.28–C § 5(5), Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 12, § 120, 1991 Tex. Gen. Laws 252, 264 (repealed 2005) (current version at Tex. Ins. Code Ann. § 462.004(4) (West 2009)).

not specifically mentioned in any provision of the Act, except in a provision making the Association an assignee of a claimant recovering under the Act.[20] There is also no universally applicable definition of "insured" in the insurance code, but Black's Law dictionary defines it to mean "[a] person who is covered or protected by an insurance policy." *Black's Law Dictionary* 879 (9th ed. 2009). The plain language of the statute does not yield a definitive answer, and the parties have not cited—nor have we found—any other authority that provides a definitive answer.

Carney, however, points to language in the Act that purportedly recognizes the compensability of assigned interests or evidences legislative intent to expand the scope of the term "insured" beyond those named in the applicable policy of insurance. First, Carney points to the definition of "covered claim," which states that the term means "an unpaid claim of an insured or third-party liability claimant . . . if . . . the third-party claimant or liability claimant or insured is a resident of this state at the time of the insured event, *or the claim is a first-party claim for damage to property that is permanently located in this state*."[21] Carney contends that the emphasized portion of the definition expands the scope of the term "insured" to anyone who holds a "first-party claim for damage to property that is permanently located in this state," and as Lincoln's assignee, Carney is holding such a claim. This portion of the definition, however, does not expand the meaning of "insured"; rather, this language restricts the definition by imposing a residency requirement and is not helpful in ascertaining the intended scope of the term "insured." To the extent Carney argues

---

[20] Article 21.28–C § 11(a), Act of May 29, 1993, 73d Leg., R.S., ch. 685, § 9.14, 1993 Tex. Gen. Laws 2559, 2635 (repealed 2005) (current version at Tex. Ins. Code Ann. § 462.307).

[21] Act of May 30, 2005, 79th Leg., R.S., ch. 995, § 3, 2005 Tex. Gen. Laws 3307, 3360 (repealed 2005) (current version at Tex. Ins. Code Ann. § 462.201) (emphasis added).

15

that the emphasized text is a stand-alone definition of "covered claim," we reject that contention because Carney's proposed construction ignores the grammatical structure of the definition of "covered claim" in a way that would write out substantive requirements of the term, including that the claim be unpaid, within policy limits, and within policy coverage.

The second contextual clue Carney relies on is language in the Guaranty Act that applies the $300,000.00 aggregate damages cap to "[i]ndividual covered claims (including any and all *derivative claims* by more than one person which arise from the same occurrence, which shall be considered collectively as a single claim under this Act) . . . ."[22] The full import and intent of this language is unclear, but it does not necessarily support Carney's interpretation of the Act because derivative claims can—and frequently do—occur in connection with third-party liability claims without the existence of an assignment relationship between the parties.

Although there are no cases directly on point, we note that this Court has previously considered and rejected a construction of the statute that would have denied a statutory beneficiary under the Texas Workers' Compensation Act the right to recover unpaid death benefits from the Association because the beneficiary was neither an insured making a first-party claim nor a person instituting a liability claim. *Texas Prop. & Cas. Ins. Guar. Assoc. v. Workers' Comp. Comm'n*, No. 03-00-00467-CV, 2001 WL 194084, at *2 (Tex. App.—Austin Feb. 28, 2001, pet. denied) (mem. op.). That case is distinguishable, however, because claims involving the Workers' Compensation Act enjoy special status under the Guaranty Act, and the Act expressly provides that

---

[22] Article 21.28–C § 5(8), Act of May 30, 2005, 79th Leg., R.S., ch. 995, § 3, 2005 Tex. Gen. Laws 3307, 3360 (repealed 2005) (current version at Tex. Ins. Code Ann. § 462.213) (emphasis added).

16

the Workers' Compensation Act controls in the event of a conflict between the two acts. *Id.*[23] There is nothing in the context of the statute that directs a similar result in this case.

We recognize that reading the term "insured" to include an insured's assignee or assignees would arguably be consonant with how the common law treats assignments of rights to insurance proceeds and that such a construction is not expressly prohibited by the Guaranty Act. Equally plausible, however, is that the legislature meant what it said and nothing more. Ordinarily, we might not ascribe much significance to the fact that assignees are not specifically included in the Act, especially given the common law overlay and the number of express statutory exceptions. *See id.* (observing that, if legislature intended to exclude workers' compensation insurance or death benefits, those categories of claims would have been included along with extensively enumerated exclusions in Guaranty Act). When the legislature intends to impose limits on a statutory remedy, it knows how to do so, and it has demonstrated that ability in the Act by enacting a number of express exceptions.

On the other hand, the legislature also knows how to expand a class of covered claims, claimants, and damages but did not explicitly extend the Guaranty Act remedy to assignees, even though assignment arrangements in the property and casualty insurance context are not uncommon. Moreover, when we compare the language in the Guaranty Act with similar laws—both those existing today and those enacted contemporaneously with the Act—the absence of language

---

[23] *See also* article 21.28-C § 25(b), Act of May 30, 2003, 78th Leg., R.S., ch. 1218, § 7, 2003 Tex. Gen. Laws 3458, 3462 (repealed 2005) (current version at Tex. Ins. Code Ann. § 462.010 (West 2009)).

17

specifically giving coverage rights to assignees becomes more conspicuous and suggestive of an intent to restrict the scope of the remedy the Act provides.

***Similar Laws and Other Statutory Construction Aids***

The Life, Accident, Health and Hospital Service Insurance Guaranty Association Act (the "Life, Accident, Health and Hospital Guaranty Act"), former article 21.28-D of the Texas Insurance Code[24] (now chapter 463 of the Texas Insurance Code) serves a similar purpose and function to the Property and Casualty Insurance Guaranty Act but for different types of insurance arrangements. These two statutory schemes, which have stood side by side since 1973, are significantly disparate in their treatment of assignees. In contrast to the Property and Casualty Insurance Guaranty Act, the Life, Accident, Health and Hospital Guaranty Act expressly provides coverage for claims held by assignees under certain insurance policies:

> Sec. 3. (a) Subject to Subsections (a-1) and (a-2) of this section [concerning residency requirements and nonduplication of benefits], this Act provides coverage for a policy or contract specified in Subsection (b) of this section to the following persons:

---

[24] *See generally* Art. 21.28–D §§ 1-21, Act of Aug. 25, 1991, 2d C.S., ch. 12, § 1.21, 1991 Tex. Gen. Laws 252, 283-98, *amended by* Act of May 30, 1993, 73d Leg., ch. 685, §§ 10.01-.02, 1993 Tex. Gen. Laws 2559, 2638, *amended by* Act of May 30, 1997, 75th Leg., ch. 184, § 1, 1997 Tex. Gen. Laws 1042, 1042-43, *amended by* Act of May 22, 1997, 75th Leg., ch. 1423, §§ 11.54-.55, 1997 Tex. Gen. Laws 5329, 5399, *amended by* Act of May 23, 2001, 77th Leg., ch. 848, § 1, 2001 Tex. Gen. Laws 1693, 1693, *amended by* Act of May 27, 2005, 79th Leg., ch. 753, §§ 1-8, 2005 Tex. Gen. Laws 2580, 2580-90 (repealed 2005) (current version at Tex. Ins. Code Ann. §§ 462.002-.351). All references to the Life, Accident, Health and Hospital Guaranty Act are to the version of the law in effect in 2006, when Texas Select became impaired. Like the Property and Casualty Insurance Act, the current version of the Guaranty Act, Tex. Ins. Code Ann. §§ 463.001-451 (West 2009), reflects a nonsubstantive codification of the law with an effective date of April 1, 2007.

(1)     a person, other than a nonresident certificate holder under a group policy or contract, who is the beneficiary, *assignee*, or payee of a person covered under Paragraph (2) of this subsection;

(2)     a person who is an owner of or certificate holder under the policy or contract, other than an unallocated annuity contract or structured settlement annuity, and who:

> (A) is a resident; or
> (B) is not a resident, but only under [limited conditions].[25]

The term "owner" includes only the actual insured or one to whom the policy was properly assigned:

> "Owner" means the owner of a policy or contract and "policy owner" and "contract owner" mean the person who is identified as the legal owner under the terms of the policy or contract or who is otherwise vested with legal title to the policy or contract through a valid assignment completed in accordance with the terms of the policy or contract and is properly recorded as the owner on the books of the insurer. The terms owner, contract owner, and policy owner do not include persons with a mere beneficial interest in a policy or contract.[26]

Thus, in the Life, Accident, Health and Hospital Guaranty Act, the legislature explicitly provides coverage for holders of assignments even if the policy itself has not been assigned. The Property and Casualty Insurance Guaranty Act does not. The dichotomy evidenced in the two acts has existed since the Life, Accident, Health and Hospital Guaranty Act was first enacted in 1973[27] (two years

---

[25] Art. 21.28-D § 3(a), Act of May 27, 2005, 79th Leg., ch. 753, § 1, 2005 Tex. Gen. Laws 2580, 2580-90 (emphasis added) (repealed 2005) (current version at Tex. Ins. Code Ann. § 463.201(a)).

[26] *Id.* § 5(8a), Act of May 27, 2005, 79th Leg., ch. 753, § 2, 2005 Tex. Gen. Laws 2580, 2580-90 (current version at Tex. Ins. Code Ann. § 463.003(7-a)).

[27] Act of May 21, 1973, 63d Leg., R.S., ch. 408, 1973 Tex. Gen. Laws 1052 (current version at Tex. Ins. Code Ann. §§ 462.002-.351).

after the Property and Casualty Insurance Guaranty Act was enacted) and has survived a substantive revision of both acts in 1991[28] as well as their codification in 2005.[29]

Two other statutes enacted in the same legislative session that gave birth to the Property and Casualty Insurance Guaranty Act further highlight the failure to include assignees within the scope of the Act. In 1971, the legislature enacted not only the Property and Casualty Insurance Guaranty Act but also the Life, Health and Accident Guaranty Act (former article 21.28–E of the insurance code, repealed)[30] and the Insurance Companies Asset Protection Act (former article 21.39–A of the insurance code, now chapter 422 of the insurance code). Each of these acts was designed to help safeguard the public from insurer insolvency, and the latter two explicitly included assignees within the scope of their protection.

At the time of enactment, the stated purpose of the Life, Health and Accident Guaranty Act was identical to the stated purpose of the Property and Casualty Insurance Guaranty Act:

> This Act is for the purposes and findings set forth in Section 1 of Article 21.28–A of the Insurance Code and in supplementation thereto by providing funds in addition to assets of impaired insurers for the protection of the holders of "covered claims" as

---

[28] Act of Aug. 25, 1991, 2d C.S., ch. 12, §§ 1.20-.21, 1991 Tex. Gen. Laws 252, 264-98.

[29] Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 1, 2005 Tex. Gen. Laws 1752, 1888-1926.

[30] Despite the similarity in name and function of this act to the Life, Accident, Health, and Hospital Service Insurance Guaranty Association Act enacted in 1973 as article 21.28–D of the Insurance Code, the two acts are not the same. The bill analysis for the 1973 enactment states that it was "similar in intent to Article 21.28–C, 'Property and Casualty Insurance Guaranty Act' and Article 21.28–E, 'Life, Health and Accident Guaranty Act' as excluded in section 3 of this Act." Bill Analysis, Tex. S.B. 777, 63d Leg., R.S. (1973).

defined herein through payment and through contracts of reinsurance or assumption of liabilities or of substitution or otherwise.[31]

The definition of "covered claim," however, was decidedly different. While the Life, Health and Accident Guaranty Act provided that a "covered claim" included "any policy benefit . . . to the owner, beneficiary, *assignee*, certificate holder, or third party beneficiary, arising from an insurance policy to which this Act applies . . . ,"[32] the Property and Casualty Insurance Guaranty Act defined covered claims only as "an unpaid claim of an insured or third-party liability claimant which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies . . . ."[33]

Similarly, the Insurance Companies Asset Protection Act required insurers to "have and maintain unencumbered assets in an amount equal to reserve liabilities" and provided "preferential claims against [the insurers' assets] in favor of owners, beneficiaries, *assignees*, certificate holders, or third party beneficiaries of insurance policies . . . ."[34] That Act applied to a broad range of insurance products, including mutual life, health, accident, fire, and casualty policies, and claimants were defined as "any owners, beneficiaries, *assignees*, certificate holders, or

---

[31] Article 21.28–E § 2, Act of May 31, 1971, 62d Leg., R.S., ch. 1034, § 1, 1971 Tex. Gen. Laws 3378, 3379 (as amended, repealed 2005).

[32] *Id.* § 5(2) (emphasis added).

[33] Article 21.28–C § 5(2), Act of May 12, 1971, 62d Leg., R.S., ch. 360, § 1, 1971 Tex. Gen. Laws 1362, 1363 (as amended, repealed 2005) (current version at Tex. Ins. Code Ann. § 462.201).

[34] Article 21.39–A § 2, Act of May 20, 1971, 62d Leg., R.S., ch. 361, § 1, 1971 Tex. Gen. Laws 1372, 1372-75 (as amended, repealed 2005) (current version at Tex. Ins. Code Ann. § 422.002) (emphasis added).

third-party beneficiaries of any insurance benefit or right arising out of and within the coverage of an insurance policy covered by this Act."[35] Furthermore, all claimants were given equal status under the terms of the Asset Protection Act.[36] The terms of the Asset Protection Act in its present form remain essentially the same. Tex. Ins. Code Ann. §§ 422.002, .003(2), .004, .005, .054 (West 2009). Although the purpose, scope, and function of this act materially differ from the Property and Casualty Insurance Guaranty Act, the incongruity in the textual treatment of assignees further conveys an intent to limit the scope of the Guaranty Act remedy.

The legislative history is unhelpful in offering any insight regarding the apparent disparity in the scope of these statutes. We note, however, that the National Association of Insurance Commissioners (NAIC) adopted a model law in 1969 that is similar in many respects to the Guaranty Act. NAIC Model Laws, Regulations and Guidelines 540-1, Volume III, § 5 & Legislative History (2010). Given the striking similarities between some of the provisions in the model law and Texas's Guaranty Act, the legislature was no doubt aware of the model law when the Guaranty Act was enacted but did not adopt the model law wholesale. A notable difference between the two is the breadth of the terms "claimant" and "covered claim" in the model law. Unlike the Guaranty Act, "covered claim" is defined in the model law as "[a]n unpaid claim . . . submitted by a claimant . . .," and "claimant" is defined as "any person instituting a covered claim, provided that no person who is an affiliate of the insolvent insurer may be a claimant." *Id.* Thus, the model law did not restrict

---

[35] *Id.* §§ 3, 4 (current version at Tex. Ins. Code Ann. §§ 422.003-.005) (emphasis added).

[36] *Id.* § 5 (current version at Tex. Ins. Code Ann. § 422.054).

"covered claims" to unpaid claims of "insureds" and "third-party claimants." This is a significant deviation that again suggests an intent to restrict the scope of recovery under Texas's Guaranty Act.

All fifty states have enacted some version of the model law, and there are many similarities and differences between the laws of other states and our law. For example, California and New Mexico expressly exclude assignees from recovery under their guaranty acts, while Minnesota expressly includes assignees as covered claimants. *Compare* Calif. Ins. Code § 1063(c)(9)(b) ("'Covered claims' does not include . . . a claim by a person other than the original claimant under the insurance policy in his or her own name . . . and does not include a claim asserted by an assignee or one claiming by right of subrogation, except as otherwise provided in this chapter.") *and* N.M. Stat. Ann. art. 59A-43-4(C) ("Covered claim shall not include any amount of an unpaid claim paid to an insured or liability claimant of an insolvent insurer by any person . . . whether or not any assignment is taken by such person.") *with* Minn. Stat. Ann. § 60C.09(1) ("A covered claim is any unpaid claim . . . which . . . is made by: . . . an assignee of a person who except for the assignment might have [otherwise had a claim under the Act]."). Most states, like Texas, are silent regarding availability of the remedy for assignees.

Although the Guaranty Act admonishes us to liberally construe its provisions to effectuate its purposes, there is strong circumstantial evidence that the legislature intended to exclude assignees from sharing in the remedy provided by the Act. It is evident that the Guaranty Act was intended as a limited remedy for some, but not all, third-party liability claimants and insureds to help ameliorate financial loss due to insurer insolvency. The Act does not exist to ensure that all debts are made good and all wrongs remedied. If assignees were allowed to seek a remedy under the

23

Guaranty Act, a party excluded by the statute could nevertheless obtain recovery by stepping into the shoes of a qualifying assignor. Such a result would frustrate the clear intent of the legislature.

The plain language of the Guaranty Act is silent concerning the right of an assignee to seek the limited remedy provided by the Act, and principles of statutory construction could yield more than one reasonable interpretation of the Act. On balance, however, we are persuaded that the disparate treatment concerning the rights of assignees reflected in similar laws and the limited nature of the remedy provided in the Act evidence the legislature's intent to limit its remedy to insureds named in the underlying policy or those who are otherwise vested with legal title to the policy. Because it is undisputed that Carney is not an insured under the Texas Select policy, the remedy provided in the Guaranty Act is not available in this case. Our holding is limited to Carney's rights under the Guaranty Act; we do not address whether Carney or those similarly situated are precluded from seeking other remedies that might be available under the law.

## CONCLUSION

The remedy provided in the Guaranty Act is limited to insureds and third-party claimants. Because Carney is neither, we affirm the trial court's summary judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: August 26, 2011

24